McPADDEN *vs.* THE NEW YORK CENTRAL RAILROAD COMPANY.

In an action to recover damages for an injury sustained by the plaintiff while a passenger on the cars of the defendant, upon its railroad, it appeared that the cause of the accident, and the injury to the plaintiff, was a broken rail, which threw the car off the track; and that a train from the opposite direction had passed over the spot only a short time previous, and that there had been no examination of the track between that time and the time of the accident. *Held* that the plaintiff should have been allowed to go to the jury upon the question whether the iron rail was not broken, before the train on which he was a passenger came upon it; it being clearly a question for the jury to determine, whether the broken rail was in a sound condition at the time such train came upon it.

If the evidence of the defendant, in such a case, though tending to show that the rail was then in a safe and sound condition, and that it broke under the train on which the plaintiff was riding, does not prove that fact conclusively, it should be left to the jury to draw the inference.

The rule is now established, in this state, that a common carrier of persons is bound to provide road-worthy vehicles, irrespective of any question of negligence.

The principle of this rule would require the carrier who furnishes his own road, and has secured to him the exclusive possession and control of it, to provide a vehicle-worthy road. That is, a road adapted to the safe passage of the vehicle used, over it—a road of continuous unbroken rails, for each and every train to enter upon, in its passage over the road.

Strictly speaking, the rail is no part of the vehicle, though in some sense it may be said to be so. The rail, however, is clearly a part of the machinery by which the vehicle is operated, and falls directly within the principle.

THIS action was brought by the plaintiff to recover for an injury sustained by him while a passenger on the cars of the defendant. On the 5th of January, 1864, the plaintiff took passage on the cars at Rochester, for Knowlesville, Orleans county. The train stopped at Brockport, and met the other train going east. That train was a few minutes behind time. About half a mile west of Brockport, the train on which the plaintiff was riding ran off the track, and the passenger coach was overturned, injuring the plaintiff severely. The train was not under full headway when the accident occurred. The cars going east went at the rate of twenty-five or thirty miles an hour. The accident was caused

by a broken rail. A piece of the rail, about four feet in length, was broken in three or four pieces. The iron appeared good and sound. A man went over the track before the train from the west came down, but there was no inspection of the track after that train passed. It was a cold morning, snowing a little, and the accident occurred about six o'clock. The plaintiff's witnesses swore that the truck of the locomotive was off the track. The defendant's witnesses testified that the hind wheels of the baggage car were the first off the track.

The counsel for the defendant moved for a nonsuit, on the ground that there was no proof of negligence or omission of duty, but clear evidence that every precaution to ensure safety to passengers had been taken by the defendant. The counsel for the plaintiff asked to go to the jury upon the question whether the rail was broken before the train going west, upon which the plaintiff was, came upon it. The court refused permission so to do, and the counsel for the plaintiff excepted. The court then, on motion of the counsel for the defendant, nonsuited the plaintiff, and the counsel for the plaintiff excepted.

The court directed a stay of proceedings, to make a case, and ordered the exceptions to be heard in the first instance at the general term.

*J. C. Cochrane,* for the plaintiff. I. The plaintiff made out a *prima facie* case. He proved the fact that he was a passenger; that the accident occurred by which he was injured; and the fact that there was a broken rail on the defendant's road. (*Stokes* v. *Saltonsoll,* 13 *Peters,* 181.)

II. If the rail was broken before the train on which the plaintiff rode came upon it, then the defendant was liable. The condition of the rail is quite as important as the condition of the wheel, and the company are bound to have both perfect, or there is not a road-worthy vehicle. (*Alden* v. *The N. Y. Central R. R. Co.,* 26 *N. Y. Rep.* 102.) To rebut the plaintiff's case, it was necessary for the defendant to establish

that the rail was perfect when this train came upon it. This it entirely failed to do. 1. The road was not inspected after the other train came down, and this was gross negligence. 2. It was before daylight, and it was snowing when the man did inspect it, before the train from the west came down. 3. The train from the west was behind time, under full headway, and put on the brakes near this place to stop at Brockport, which would be the probable cause of the break. 4. The train on which the plaintiff was, had not got under full headway, and would not be as likely as the other train to break the rails. 5. The frost in the rail would be likely to cause a break by the first train, and not by the second. 6. There is no proof conflicting with these views. Unless broken and displaced, the injury could not be discovered by any one on the train. The rail might well have been broken, and not displaced by the other train, as it was packed in snow and ice. Even if displaced, the engineer would not have been likely to notice it, as the shock of the breaking train would have been simultaneous with the jar on the track. Certainly this was a question of fact for the jury, and not a question of law, when the defense rested entirely in conjecture. (*Bernhardt* v. *Rensselaer and Saratoga R. R. Co.*, 23 *How.* 167. *Edgerton* v. *N. Y. and Harlem R. R. Co.*, 35 *Barb.* 193, 389.)

III. The defendant also failed to give any proof in regard to the quality of the iron, or the length of time it had been used. There was no proof, whatever, that it was the best quality of iron that could be procured for the purpose. Whether American, English or Russian iron, does not appear. Instead of directing a nonsuit, the court should have ordered a verdict for the plaintiff.

*A. P. Laning*, for the defendant. I. When the evidence closed, the defendant moved for a nonsuit, upon the ground that there was no proof of negligence or omission of duty, but clear evidence that every precaution to secure the safety

of passengers had been taken by the defendant. 1. In order to recover, the plaintiff was bound affirmatively to prove that the injury sustained by him was caused by the wrongful act of the defendant, either in the manner of running the train, or in the neglect to take such precautionary measures as would insure its safety. This he does not attempt to do, except by proving that the car, in which he was, ran off the track, by reason of a broken rail that appeared to have been sound. This was hardly sufficient to charge the burthen of the proof upon the defendant to show that it was without fault. (*Wilds* v. *The H. R. R. R. Co.*, 29 *N. Y. Rep.* 315.) 2. The defendant proved, conclusively, that it was without fault. (1.) That the rail was sound, as large as any in use, perfect in form, and that all the breaks were new, and out of solid iron. That the end was not battered, that it made a good joint, that the chair was good, that the ties were good and in sufficient number to support the rail, and that the road was well ballasted with gravel. (2.) It used the precaution to send a person over the track just before the passage of this train, to see that the track was all right, and it is undisputed that it was. But one train passed over the track after this, which met the one the plaintiff was on at a station one half mile east of the place of the accident, and no time intervened to examine the track after that train passed. (3.) That the engines and cars of both trains were in good order, under charge of experienced conductors, and run at a speed of twenty-five miles per hour. 3. The defendant proved, and it was undisputed, that rails break when sound, and when the track is in perfect order, and that there is no way of preventing it, in frosty weather. To hold the defendant liable under such circumstances, is to hold it responsible for the laws of nature, which it can neither control nor guard against. In all such cases the motto *damnum absque injuria* applies.

II. The plaintiff's counsel then asked the court to submit to the jury, whether the rail was broken before the train upon which the plaintiff was came upon it. This the court

McPadden *v.* New York Central Railroad Company.

declined to do, and the counsel excepted. 1. The submission of this question was, at most, discretionary with the court, and therefore not the subject of exception. (*Code,* § 261.) 2. There was no evidence on which the jury could find that it was so broken. The watchman had just passed on the track, for the purpose of discovering broken rails, and found none. The train bound east had just passed in safety, and found none, and if the rail had been displaced it would have been discovered by the engineer and conductor of that train. The engine and express car of the plaintiff's train passed over safely. The engineer says he did not discover any break in the rail, and that he would have detected it if misplaced. These, with the considerations noted under the first point, show that the rail was not broken, or if broken, was not displaced so as to be discovered, and therefore did not tend to charge the defendant.

III. A verdict for the plaintiff upon this evidence, (and the case shows that it is all set forth,) could not be sustained without overturning the entire current of authority, but would be set aside as against evidence ; and for that reason the plaintiff was properly non suited. (*Wilds* v. *Hudson River R. R. Co.*, 24 *N. Y. Rep.* 430.) Judgment should therefore be ordered for the defendant.

*By the Court,* JOHNSON, J. The plaintiff was improperly nonsuited. His counsel asked permission to go to the jury upon the question whether the iron rail was not broken before the train on which the plaintiff was a passenger came upon it. The cause of the accident, and the injury to the plaintiff, was a broken rail, which threw the car in which the plaintiff was riding from the track, while the train was running at a speed of from twenty to twenty-five miles per hour. It appears, from the evidence, that the express train from the west had passed over the place where the rail was broken, only a short time previous, and that there had been no examination of the track between that time and the time of the

accident in question. It was therefore clearly a question for the jury to determine, whether the broken rail was in a sound condition at the time the train in which the plaintiff was riding came upon it. It is claimed by the defendant's counsel, that all the evidence shows that the rail was then in a safe condition, and that it broke under the train on which the plaintiff was riding. The most that can fairly be claimed is, that the evidence tended to establish this. It does not prove it conclusively, and it should have been left to the jury to draw the inference. The rule is now established in this state, that a common carrier of persons is bound to provide road-worthy vehicles, irrespective of any question of negligence. (*Alden* v. *The New York Central Railroad Co.*, 26 *N. Y. Rep.* 102.) This is a simple, plain, and eminently sensible rule, and it should be applied in all cases falling clearly within the principle. The same principle would require the carrier who furnishes his own road, and has secured to him the exclusive possession and control of it, to provide a vehicle-worthy road. That is, a road adapted to the safe passage of the vehicle used over it—a road of continuous unbroken rails for each and every train to enter upon in its passage over the road. Strictly speaking, the rail is no part of the vehicle, though in some sense it may be said to be so. But however this may be, the rail is clearly a part of the machinery by which the vehicle is operated, and falls directly within the principle. The learned judge erred, therefore, at the circuit, in refusing to allow the plaintiff to go to the jury on the question whether the rail was not broken before the train on which he was riding came upon it. There must consequently be a new trial, with costs to abide the event.

[MONROE GENERAL TERM, March 5, 1866. *Welles, E. D. Smith* and *Johnson,* Justices.]